## UNITED STATES v. P. KOENIG COAL CO.

(District Court, E. D. Michigan, S. D. August 4, 1923.)

No. 8356.

1. **Carriers ☞38—Indictment for obtaining unlawful discrimination held not to show violation of order giving hospital priority as to furnishing of cars.**

Indictment for receiving unlawful concession and discrimination from interstate railroad, in violation of Act Feb. 19, 1903, § 1, as amended by Act June 29, 1906, § 2 (Comp. St. § 8597), does not show violation of order of Interstate Commerce Commission giving hospitals priority with respect to furnishing of cars for coal, by ordering and obtaining coal ostensibly for hospital, and then diverting it to automobile manufacturer, where it is not alleged that coal for which cars were so furnished was not required by the hospital.

2. **Indictment and information ☞63 Allegation that order for shipment of coal to hospital was deceptive device held a conclusion.**

Allegation of indictment for obtaining unlawful concession and discrimination from interstate railroad that sending of orders for coal to be shipped to hospital in defendant's care was deceptive device was mere conclusion, where it did not indicate how such device was deceptive.

3. **Commerce ☞40(1)—Diversion of coal after delivery held intrastate movement, and order of Interstate Commerce Commission forbidding it was void.**

Where defendant ordered coal shipped to hospital in its care for delivery on its side track, and the coal was so shipped, consigned, and delivered, and was accepted by defendant on such side track, the interstate movement ended, and subsequent diversion to automobile manufacturer in the same state was intrastate movement, and, if order of Interstate Commerce Commission forbidding such diversion was intended to be applicable thereto, it was to that extent void.

Criminal prosecution by the United States against the P. Koenig Coal Company. On demurrer to the indictment. Demurrer sustained.

Earl J. Davis, U. S. Atty., of Detroit, Mich., and William H. Bonneville, Sp. Asst. U. S. Atty.

Edwin R. Monnig and Harold Goodman, both of Detroit, Mich., for defendant.

TUTTLE, District Judge. This case is before the court on demurrer to the indictment. The indictment alleges the acceptance by the defendant of certain unlawful concessions and discriminations in respect to transportation in interstate commerce, in violation of section 1 of the so-called Elkins Act (Act Feb. 19, 1903, c. 708, 32 Statutes at Large, 847), as amended by section 2 of the Hepburn Act (Act June 29, 1906, c. 3591, 34 Statutes at Large 587 [Comp. St. § 8597]). This section, as so amended, provides, among other things, as follows:

"It shall be unlawful for any person * * * or corporation to * * * accept or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier * * * whereby any * * * advantage is given or discrimination is practiced. Every person or corporation * * * who shall knowingly * * * accept or receive any such rebate, concession, or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished" as provided in said section.

The concessions and discriminations charged to have been accepted by the defendant are alleged to have resulted from the obtaining by it of a preference and priority forbidden by a certain order made by the Interstate Commerce Commission on July 25, 1922, known as Service Order No. 23. That order included the following provisions:

"It is ordered and directed: * * * That * * * common carriers by railroad are hereby authorized and directed whenever unable to supply all uses in full to furnish * * * coal mines with open top cars suitable for the loading and transportation of coal, in preference to any other use, supply, movement, distribution, exchange, interchange or return of such cars. * * *

"That in the supply of cars to mines * * * such carrier is hereby authorized and directed, to place, furnish, and assign such coal mines with cars suitable for the loading and transportation of coal in succession as may be required for the following classes of purposes, and in following order of classes, namely:

"Class 1. For such special purposes as may from time to time be specially designated by the Commission or its agent therefor. And subject thereto:

Class 2. * * * For * * * hospitals, * * * all to the end that, such * * * quasi public utilities * * * may be kept supplied with coal for current use for such purposes, but not for storage, exchange, or sale. And subject thereto: * * *

Class 5. Other purposes. No coal embraced in classes 1, 2, 3, or 4 shall be subject to reconsignment or diversion except for some purpose in the same class or a superior class in the order of priority herein prescribed."

None of said classes included automobile or other manufacturers.

The indictment contains 15 counts, all of which are, in legal substance, identical; the only difference between them being that each charges a separate transaction of exactly the same kind as all of the others. The first count is typical and illustrative of all. It alleges the making, by the Interstate Commerce Commission, of the said service order, recites the terms of said order, and alleges the inability of common carriers to transport all freight traffic offered, or to place, furnish,

and assign to coal mines cars for the transportation of coal required for manufacturing automobiles or automobile parts, although able to assign such cars for coal required for the current use of hospitals. It then proceeds to charge that, while said order was in effect, the defendant herein knowingly accepted and received a concession in respect to the transportation of property in interstate commerce by certain common carriers by railroad subject to said order whereby an advantage was given to said defendant and a discrimination was practiced in its favor, in that the defendant, intending to obtain a preference and priority in the placement and assignment of cars for the loading and transportation of coal, which defendant was not lawfully entitled to receive, "by and through the deceptive device of sending on that day from Detroit aforesaid to the Monitor Coal & Coke Company, at Huntington, W. Va., a telegraphic order for coal which purported to be an order for the shipment of five carloads of coal to the Samaritan Hospital at the city of Detroit, in said Southern division of said Eastern district of Michigan, in care of said the P. Koenig Coal Company, and to be delivered there to said the P. Koenig Coal Company upon its side track connecting with the line of said the Grand Trunk Railway Company of Canada, for the use of said Samaritan Hospital, induced the placing, furnishing, and assigning, by said the Chesapeake & Ohio Railway Company, on August 5, 1922, at the request of said the Monitor Coal & Coke Company, of a certain car which was suitable for the loading and transportation of coal at a certain coal-loading point on its line in West Virginia, to wit, the railroad car bearing the initials 'C. & O.' and the serial number '60260,' at Monitor No. 2 mine of said the Monitor Coal & Coke Company, in West Virginia aforesaid, the loading of said car on August 5, 1922, by said the Monitor Coal & Coke Company, with 96,700 pounds of run of mine bituminous coal, the tendering by said the Monitor Coal & Coke Company to said the Chesapeake & Ohio Railway Company, for transportation, of said loaded car, billed and consigned in accordance with said telegraphic order, the transportation thereof by said common carriers, by continuous carriage and shipment, over their connecting railway lines, to Detroit aforesaid, in accordance with said billing, and its delivery there, on said August 31, 1922, to said the P. Koenig Coal Company upon its said Grand Trunk siding near Scott street, which said delivery said the P. Koenig Coal Company then and there accepted;" that the defendant, "immediately upon the receipt and acceptance by it of said coal as aforesaid, at Detroit aforesaid, there diverted and delivered the same in said car to a concern engaged in the manufacture, at Detroit aforesaid, of automobiles and automobile parts, to wit, to Dodge Bros., a corporation, for its use in such manufacture; and that at the several times of the sending by said the P. Koenig Coal Company of said telegraphic order, of said procuring of said transportation of said carload of coal, and of its said delivery to and acceptance by said the P. Koenig Coal Company, the said Samaritan Hospital, as said the P. Koenig Coal Company at all those times well knew, had not authorized or requested said the P. Koenig Coal Company so to use its name for the purpose of procuring said carload of coal, or any coal whatever, for the use

of said Dodge Bros.;" and that the defendant "at the time and place, in manner and form, and by the device and means aforesaid, unlawfully did knowingly accept and receive a concession and discrimination in respect to the transportation of property in interstate commerce by common carriers subject to the act to regulate commerce and the acts amendatory thereof and supplementary thereto, whereby an advantage was given, by those carriers, to said the P. Koenig Coal Company, in respect to said transportation of said property, which, by force of said Service Order No. 23, was not then, as said the P. Koenig Coal Company then and there well knew, open or due to said the P. Koenig Coal Company, and which the said common carriers, but for said device, would not have granted to it, against the peace and dignity of the United States, and contrary to the form of the statute of the same in such case made and provided."

The demurrer attacks the indictment on several different grounds.

It is earnestly insisted by defendant that the indictment does not allege facts which would constitute any offense against the United States. As is shown by the last paragraph of the first count, just quoted, the offense charged against the defendant is that it "by the device and means aforesaid unlawfully did knowingly accept and receive a concession and discrimination in respect to the transportation of property in interstate commerce by common carriers * * * whereby an advantage was given by those carriers to said the P. Koenig Coal Company in respect to said transportation of said property, which, by force of said Service Order No. 23 was not * * * open or due to said" defendant. Whether, then, the indictment sufficiently alleges acts of the defendant which, if proved, would constitute the crime charged, depends upon the question whether those acts, if committed, would violate Service Order 23. In what respect, then, do the facts alleged by the government, if true, show a violation of that order?

[1] As the commodity transported and delivered was coal, no question arises with respect to priority as between coal and other commodities. The only other provision for priority prescribed in the order is that directing carriers to place, furnish, and assign to coal mines cars suitable for the loading and transportation of coal as required for the classes of purposes and in the order of classes specified in such order, whereby hospitals were accorded priority over manufacturers of automobiles in the placing, furnishing, and assigning of cars to coal mines for the loading and transportation of needed coal. It will be noted that the indictment does not charge that the coal for which the cars in question were "placed, furnished, and assigned" to the mine was not required for the hospital in question. So far as appears from the indictment, such coal may have been required for the current use of such hospital. It is therefore clear that no violation of this provision of the order is charged.

[2] The reference, in the indictment, to the sending of the telegraphic orders for coal to be shipped to the hospital mentioned, as a "deceptive device," is plainly the mere expression of a conclusion, and, failing as it does to even indicate in what respect the alleged "device" is claimed to be "deceptive," falls far short of being a definite, issuable

statement of fact, such as is necessary to an indictment in a federal court.

[3] The only other respect in which it is, or can be, claimed by the government that the defendant is charged with a violation of this order of the Interstate Commerce Commission is the allegation that, immediately upon the receipt· and acceptance by it of said coal upon its side track in the city of Detroit, the defendant "diverted and delivered" the same to a concern engaged, in the same city, in the manufacture of automobiles, for its use in such manufacture. As already indicated. Service Order 23 provides that no coal embraced in the preferred classes shall be subject to reconsignment or diversion, except for some purpose in the same class or a superior class in the order of priority therein prescribed. Does the allegation that the defendant, after receiving and accepting on its side track in a city a car of coal delivered to it there in accordance with its consignment and billing, diverted such car to an automobile manufacturer in such city, even when such allegation is read and considered in connection with all of the other facts and circumstances referred to in the indictment, show the receipt or acceptance by the defendant of a concession or discrimination "in respect to the transportation of property in interstate commerce"? Manifestly, unless such diversion was a concession in respect to transportation in interstate commerce, it is neither a violation of the order of the Commission nor an offense under the Elkins Act as amended, and could not constitutionally be made a crime, either by the Interstate Commerce Commission or by Congress.

Whether a particular shipment is a part of interstate commerce or of intrastate commerce depends upon the essential character of such movement. However, when the intention, as to ultimate destination, with which a shipment has been made, is in issue, there are various incidents, such as through billing, uninterrupted movement, continued· possession by the carrier, and unbroken bulk, which are common incidents of a through shipment, and have legal significance as bearing on the character of the traffic involved, and the presence or absence of one or all of such incidents may be important evidence bearing upon the question whether such traffic is interstate or intrastate commerce. Baltimore & Ohio Southwestern Railroad Co. v. Settle, 260 U. S. 166, 43 Sup. Ct. 28, 67 L. Ed. ——. The allegations in the present indictment hereinbefore quoted show that the coal in question was ordered by the defendant to be shipped to the hospital referred to, at Detroit, in care of the defendant, and to be delivered there to the defendant upon its said side track, for the use of said hospital; that such coal was shipped to Detroit, billed and consigned in accordance with such order, and transported to Detroit "in accordance with said billing;" and that it was there delivered to the defendant upon its siding in the city, "which said delivery said the P. Koenig Coal Company then and there accepted." It seems clear that whether, under these circumstances, this coal be regarded as consigned, transported, and delivered to the hospital "in care of" the defendant as its agent to receive and accept such delivery, or whether it be considered as shipped and delivered to the defendant as a principal, to be thereafter furnished by it

to such hospital (on which point the indictment is not entirely definite), still the through movement of the coal in its interstate shipment from the origin of its transit in West Virginia to the termination thereof at its destination (as regards both billing and actual movement), ended when it was finally delivered to and accepted by the defendant at the agreed and actual place of delivery on the siding of the defendant in the city of Detroit, at least so far as the allegations of the indictment are concerned. There is, in my opinion, nothing in the indictment to show that at the time and place of such delivery and acceptance this coal did not come to rest, as regards its movement in interstate commerce. If so, its subsequent "diversion" (the nature of which is not in any way indicated by the indictment) and "delivery" from one point in the state of Michigan to another point within such state was essentially a movement in intrastate commerce alone, and not within the prohibition of any federal statute, nor within the scope of the powers of the federal government, and if intended to be applicable to such a situation Service Order 23 is to that extent unconstitutional and void. Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615; Chicago, Milwaukee & St. Paul Railroad Co. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988; Arkadelphia Milling Co. v. St. Louis Southwestern Railway Co., 249 U. S. 134, 39 Sup. Ct. 237, 63 L. Ed. 517; Southern Pacific Co. v. Arizona, 249 U. S. 472, 39 Sup. Ct. 313, 63 L. Ed. 713.

It follows that the indictment fails to allege any offense against the United States, and the demurrer must be sustained, and an order entered to that effect.