**UNITED STATES v. P. KOENIG COAL CO.**

(District Court, E. D. Michigan, S. D. September 22, 1924.)

No. 8875.

**1. Carriers** ⟂38—**Inducing carrier by deception to illegally transport a carload of coal held not the receiving of a "concession."**

Obtaining the furnishing of a car for, and the transportation by a carrier of, a carload of coal, in violation of Service Order No. 23 of the Interstate Commerce Commission of July 25, 1922, by means of an order for the coal ostensibly for hospital purposes, which was entitled to preference, but which coal was diverted to other uses, not preferential, *held* not the acceptance or receiving of a "concession," made an offense by Elkins Act, § 1, as amended by Hepburn Act, § 2 (Comp. St. § 8597 [1]).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Concession.]

**2. Words and Phrases—"Concession."**

"Concession" means a voluntary grant or yielding to a claim or demand, and cannot be applied to something obtained through deception or trickery.

Criminal prosecution by the United States against the P. Koenig Coal Company. On demurrer to indictment. Demurrer sustained.

Delos G. Smith, U. S. Atty., of Detroit, Mich., and William H. Bonneville, Sp. Asst. U. S. Atty., of Washington, D. C., for the United States.

Edwin R. Monnig and Harold Goodman, both of Detroit, Mich., for defendant.

TUTTLE, District Judge. This cause is now before the court, on demurrer to an indictment, for the second time. On the previous hearing a demurrer to the indictment then pending was sustained for reasons pointed out in the written opinion of the court, as reported in 291 Fed. 385. Thereafter another indictment was returned against the defendant based upon the same transactions as were involved in the previous indictment, but framed in an effort to avoid the objections sustained on the former hearing. A demurrer has again been filed, challenging the sufficiency of the present indictment on grounds not previously presented nor passed upon.

[1] The indictment charges the defendant with having knowingly accepted certain illegal concessions in respect to the transportation of property in interstate commerce, in violation of section 1 of the so-called Elkins Act (Act Feb. 19, 1903, c. 708, 32 Statutes at Large, 847), as amended by section 2 of the Hepburn Act (Act June 29, 1906, c. 3591, 34 Statutes at Large, 587), being Comp. St. § 8597(1). The language of this section, as so amended, which is here involved is as follows: .

"It shall be unlawful for any person * * * or corporation to * * * accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier * * * whereby any * * * advantage is given or discrimination is practiced. Every person or corporation * * * who shall, knowingly, * * * accept, or receive any such rebates, concession, or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished" as provided in said section.

The concessions charged to have been accepted by the defendant are alleged to have resulted from the obtaining by it, from a certain common carrier, by means of deception, of a preference and priority forbidden by a certain order made by the Interstate Commerce Commission on July 25, 1922, known as Service Order No. 23. The material provisions of that order were as follows:

"It is ordered and directed: * * * That * * * common carriers by railroad are hereby authorized and directed whenever unable to supply all uses in full to furnish * * * coal mines with open top cars suitable for the loading and transportation of coal, in preference to any other use, supply, movement, distribution, exchange, interchange or return of such cars. * * *

"That in the supply of cars to mines * * * such carrier is hereby authorized

and directed to place, furnish, and assign such coal mines with cars suitable for the loading and transportation of coal in succession as may be required for the following classes of purposes, and in following order of classes, namely:

"Class 1. For such special purposes as may from time to time be specially designated by the Commission or its agent therefor. And subject thereto.

"Class 2. * * * For * * * hospitals * * * all to the end that such * * * quasi public utilities * * * may be kept supplied with coal for current use for such purposes, but not for storage, exchange, or sale, and subject thereto. * * *

"Class 5. *Other Purposes.* No coal embraced in classes 1, 2, * * * shall be subject to reconsignment or diversion except for some purpose in the same class or a superior class in the order of priority herein prescribed."

None of such preferred classes included manufacturers of automobiles.

The indictment contains 18 counts, of which the first is typical of all. That count first alleges the making, by the Interstate Commerce Commission, of the service order in question, recites the terms of such order, and alleges the inability of common carriers to transport all freight traffic offered, and to place, furnish, and assign to coal mines cars for the transportation of coal required for manufacturing automobiles or automobile parts, although able to assign such cars for coal required for the current use of hospitals. It is then alleged that, while said order was in effect and applicable, the defendant, a corporation engaged in the business of a coal dealer, knowingly accepted a concession of the kind forbidden by the statute just cited, by means of the following transaction: That the defendant, intending by that means to obtain a preference and priority in the placement and assignment of cars for the loading of coal and in the transportation of coal, which it was not then lawfully entitled to receive, and intending to procure for Dodge Bros., a corporation engaged in the manufacture of automobiles at Detroit in this district, the transportation of certain coal in interstate commerce from West Virginia into said district for the use of said Dodge Bros. in the manufacture of automobiles and to divert and deliver such coal to such manufacturer, through the device of sending to a certain named coal-mining company in West Virginia a telegraphic order for certain coal, purporting to be an order for the shipment of such coal to a certain named hospital at the city of Detroit in care of the defendant, and to be delivered there to defendant on its side tracks, for the use of such hospital, induced the placing and assigning by a named common carrier railroad company, at the request of said mining company, of a described car at a particular mine in West Virginia and the loading and tendering of said car, by said mining company, to said railroad company for transportation, billed and consigned in accordance with said telegraphic order, by said carrier and its connecting carriers, to Detroit and its delivery there to the defendant on its said siding, which delivery the defendant accepted. It is then charged that "said device then and there was a deceptive device, because none of said carriers then had any knowledge of said intentions of said the P. Koenig Coal Company"; that the defendant, in pursuance of its said intentions and as a final step in a device for securing said unlawful concession, immediately upon the receipt and acceptance by it of said coal there diverted and delivered the same in said car to said Dodge Bros. for use in its manufacture of automobiles, which coal was so used by it; that during all of the aforesaid acts on the part of the defendant the said hospital, as defendant well knew, did not need said coal, and had not authorized or requested the defendant to use its name for the purpose of procuring coal for its own use, or for the use of any other consumer; and that therefore the defendant, by the device referred to, knowingly accepted and received a concession in respect to the transportation of property in interstate commerce by a common carrier subject to the Interstate Commerce Act, which concession was "obtained by deception practiced by it upon said carrier whereby an advantage was given by those carriers to said the P. Koenig Coal Company, which, by force of said Service Order No. 23, was not then, as said the P. Koenig Coal Company then and there well knew, open or due to it, the said the P. Koenig Coal Company, and which the said common carrier, but for said device and deception, would not have granted to it, and whereby a discrimination was practiced in its favor and against others, against the peace and dignity of the United States and contrary to the form of the statute of the same in such case made and provided."

The first ground on which the demurrer of the defendant is based is that the acts so charged in the indictment do not constitute

the acceptance or receipt by the defendant of a "concession" given by a common carrier, as forbidden by the statute thus relied on by the government.

After close and careful consideration of the able and exhaustive briefs submitted by the parties, I have reached the conclusion that the contention of the defendant in this respect is correct, and that for that reason alone the demurrer must be sustained.

It cannot be doubted that the conduct of which the defendant is here accused was, if indulged in, most reprehensible and deserving of severe condemnation. The sole question, however, with which this court is now concerned is whether such conduct constitutes the acceptance or receipt of a "concession" from a common carrier railroad, as denounced by the statute invoked by the government.

It is an elementary rule of statutory construction that, in the absence of circumstances indicating otherwise, words used by a legislative tribunal in the enactment of a statute are to be considered as having been so used according to their usual, ordinary meaning.

[2] The common dictionary meaning of a "concession" (as illustrated by the definitions in the Century and in Webster's International dictionaries) is "the act of conceding or yielding, usually implying a demand, claim, or request," "a thing yielded," "a grant."

Now, nothing could be clearer than that, under the express allegations of the indictment involved, the advantage obtained is explicitly declared to have been received by the defendant from the carriers, not as a benefit yielded or consciously granted by them, but solely through and by means of deception practiced upon them by the defendant. The government charges in substance that the carriers were tricked by the defendant into transporting this coal, which they would not have done "but for said device and deception." To say, under these alleged circumstances, that the carriers thus imposed on by the defendant and fraudulently induced to transport this freight were thereby actually granting (although unknowingly) to the defendant a "concession," or that the defendant was thereby receiving from such carriers a "concession," is, in my opinion, to do violence to the plain meaning of language and to fail to call things by their proper names. If an advantage obtained by such artifice and fraud be a *concession* accepted or received by the deceiver from his victim (and, therefore,

necessarily granted or given, even although unknowingly, by the deceived), then the hobo who steals a ride on the "bumpers" of a railroad car thereby receives and accepts a concession given him by such railroad, and the thief who picks the pocket of a conductor on a train knowingly accepts and receives a concession "given" him, though not knowingly. I can perceive no real difference nor distinction in the underlying principles involved in the instances just suggested. In essence they seem to me to be the same. Although I am aware that in the only reported decision, so far as I can learn, involving this precise question (that of the District Judge in United States v. Metropolitan Lumber Co. (D. C.) 254 Fed. 335), a contrary opinion was reached, I am unable, after careful study of that decision, to approve or accept the conclusions there expressed. I cannot avoid the conviction that they embody, and are based upon, the reasoning to which I have already referred and with which I cannot agree.

A careful reading of the Elkins Act leaves no doubt that its purpose was to punish and prevent the favoritism of shippers by common carriers in interstate commerce, and that, in order to more effectually accomplish this purpose Congress, after originally legislating against only the carriers who granted such favoritism, extended its prohibitions, so as to reach also the recipients of, and participants in, such favoritism, namely, the shippers who, by knowingly accepting or receiving such unfair favors, promoted and made them possible. In the language of the report of the committee on interstate commerce in reporting the bill to the House (which report, of course, is entitled to consideration in the judicial construction of the statute), the committee believed that the Elkins Act, together with the Interstate Commerce Law then existing, covered about all possible means "to prevent the granting of discriminations in favor of one shipper against another, or the building up of one concern through the favoritism of railroad corporations."

Nor is it without significance, as bearing upon the meaning of this statute, that an entirely different statute (section 10 of the Act of Feb. 4, 1887, c. 104, 24 Stat. 382, as amended [Comp. St. § 8574]), expressly forbids the obtaining of various kinds of rebates by means of false statements, "whether with or without the consent or connivance of the carrier," being apparently intended by Congress to relate to an evil not also covered by any other statutory provision.

In view of the considerations mentioned, and bearing in mind that the penal statute involved should be construed strictly, and limited to the plain meaning of the language used, I reach the conclusion that it cannot properly be so extended as to include within its prohibitions the conduct charged against the defendant by the indictment at bar.

For the reasons stated, the demurrer must be sustained on the first ground therein presented, namely, that the acts alleged in the indictment do not constitute the offense charged. There is therefore no occasion to consider the objections urged to the validity of the service order involved. An order will be entered sustaining the demurrer.