# SOUTHERN PACIFIC COMPANY *v.* STATE OF ARIZONA.

ERROR TO THE SUPREME COURT OF THE STATE OF ARIZONA.

No. 238. Submitted March 13, 1919.—Decided April 14, 1919.

Whether a shipment was at a given time interstate is a question of fact. P. 477.

Evidence *held* insufficient to prove that a traveling show was moving interstate, at the time of proceedings before a state commission, to require transportation within the State and fix the rate. *Id.*

The mere intention to continue the tour of a traveling show beyond the State where it was performing, *held* not enough to give interstate character to a contemplated journey within the State. *Id.*

A claim of federal right which was not set up in the state court and made in the assignments of error *held* not open in this court. P. 478.

*Semble*, that when required by a state commission to transport a

traveling show at a rate which is not objected to and upon terms the same as it has habitually and voluntarily agreed to in like cases, a railroad company has no ground to complain that it is thus deprived of its liberty to make or refuse a contract as a private carrier, in violation of the equal protection and due process clauses of the Fourteenth Amendment.   P 478.

19 Arizona, 20, affirmed.

THE case is stated in the opinion.

*Mr. C. W. Durbrow, Mr. Henley C. Booth* and *Mr. Wm. F. Herrin* for plaintiff in error, in support of the contention that the movement was interstate, cited *South Covington Ry. Co.* v. *Covington,* 235 U. S. 537, 545; *United States* v. *Union Stock Yards of Chicago,* 226 U. S. 266, 304; *Missouri, Kansas & Texas Ry. Co.* v. *Texas,* 245 U. S. 484; *Western Oil Refining Co.* v. *Lipscomb,* 244 U. S. 346, 348.

In support of the contention that the right of private contract was invaded, in violation of the Fourteenth Amendment,—*Chicago, Rock Island & Pacific Ry. Co.* v. *Maucher,* 248 U. S. 359; *Santa Fe, Prescott & Phoenix Ry. Co.* v. *Grant Brothers Construction Co.,* 228 U. S. 177; *Baltimore & Ohio S. W. Ry. Co.* v. *Voigt,* 176 U. S. 498; *Wilson* v. *Atlantic Coast Line,* 129 Fed. Rep. 774; affd. 133 Fed. Rep. 1022; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Wallace,* 66 Fed. Rep. 506; *Cluff* v. *Grand Trunk Western Ry. Co.,* 155 Fed. Rep. 81; 1 Hutchinson on Carriers, 3d ed., § 88; Moore on Carriers, § 38, pp. 79, 80.

It is not necessary in order to render an order or a statute obnoxious to the Federal Constitution that it in terms or in effect authorize the actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment or the power of disposition at the will of the owner. *Forster* v. *Scott,* 136 N. Y. 577; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 336.

*Mr. Wiley E. Jones,* Attorney General of the State of Arizona, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

An agent for Campbell's United Shows applied to the Southern Pacific Company to transport eighteen cars, carrying a carnival show equipment, including employees and animals, from Tucson via Maricopa, to Phœnix, Arizona.

In reply to this application the company gave two reasons for refusing the request. The first of these was that the company had contracted for the transportation of another show, under an agreement not to carry a second one within thirty days, which had not expired; and the second, that the company was not a common carrier of shows and would not make the customary contract with Campbell, but would serve him only at certain published interstate rates, which it regarded as applicable. These were many times greater than had been charged for the same show and than had been the customary charge by the Southern Pacific and other companies for similar service.

Upon receiving this refusal, an application by the owner of the shows to the Arizona Corporation Commission for relief, resulted in an order to the Southern Pacific Company and the Arizona Eastern Railroad Company, operating a connecting line, to show cause why they should not publish, on one day's notice, a special rate, designated in the order of the commission, for the transportation of the shows between the points named. The reasonableness of the required rate is not contested, and the order permitted the Southern Pacific Company to make the special terms for transportation of the shows which had been customary with it in like cases.

The company refused to obey the order and the commission issued to it a second rule to show cause why it should not be punished for contempt for such disobedience. On this second rule a hearing was had, and the company was adjudged in contempt and fined $1500, which it refused to pay.

Thereupon the State of Arizona instituted this suit in a superior court of that State to recover the amount of the fine.

In its answer to the complaint of the State, the Southern Pacific Company alleged:

That the proposed movement of the shows was "interstate in character" because they were engaged in a tour, beginning at the City of El Paso, Texas, and designed to extend through the States of Arizona and New Mexico into the State of California, of which tour the movement from Tucson to Phœnix was a part; that in its necessary operation the order would require the company to accept a rate lower than its published interstate rate and would be a direct burden upon interstate commerce; and that, for these reasons, the order for the transportation was in contravention of the provisions of Article I, § 8, of the Constitution of the United States, and the fine for contempt was unlawfully imposed and void.

The judgment of the superior court was in favor of the State, the company appealed to the Supreme Court of Arizona, which affirmed the judgment, and the case is here on writ of error.

The only claim of error argued in this court which is properly presented by the record is: Whether the persons and property which the commission ordered the railroad company to carry were in interstate transportation when the order was made for the service between two stations in Arizona. If the shipment was then in interstate commerce the order was void and if

it was not the order was valid and the judgment of the
Supreme Court of Arizona must be affirmed.

The evidence which was before the courts and the
commission was as follows:

Early in February, 1914, an agent for the shows
applied to the Southern Pacific Company for their
transportation from El Paso, Texas, to various towns
in Arizona where it was desired to exhibit, and ulti-
mately to Cochise, Arizona, from which point another
line would be taken into Tucson. Nothing came of this
application and an arrangement was made for carriage
to Tucson by another road. Before the shows arrived
at Tucson the application out of which this suit arose
was made. The agent for the shows testified that the
tentative purpose of the management was to go from
Tucson to Prescott, to Clarkdale, to Kingman, all in
Arizona, and then to Needles, California, exhibiting
in each town, but when testifying on March 23rd, when
his show was exhibiting in Tucson, he said that although
he had made application to the Santa Fe Railroad
Company for a contract for transportation beyond
Phœnix, he had not at that time received a reply.

The agent for the Santa Fe Company at Phœnix
testified that about March 20th an application was
made to him for a rate and contract for the transporta-
tion of the shows over his line from Phœnix to Prescott,
"possibly to Clarkdale and to Needles, California."

Two contracts with the Santa Fe Company were
introduced in evidence, one dated April 3rd, providing
for the transportation of the shows from Phœnix to
Prescott, to Kingman and to Needles, and the other
dated April 16th, providing for transportation from
Prescott direct to Bakersfield, California.

The shows were actually carried by the Southern
Pacific Company on March 29th or 30th from Tucson
to Phœnix but at an interstate rate insisted upon in

defiance of the commission's order.   At Phœnix the transportation ended so far as the Southern Pacific Company was concerned, and the contract with the Santa Fe Company to carry the shows beyond that city was not concluded, as we have seen, until April 3rd—in its modified form, not until April 16th.

This statement of the case decides it.   Whether a shipment was at a given time in interstate commerce is a question of fact, *Railroad Commission of Ohio* v. *Worthington*, 225 U. S. 101, 108; and it is plainly impossible to say that the property and persons constituting the shipment of the shows here involved were in progress of interstate transportation when the Arizona commission entered its order on March 25 that the company should accept the intrastate shipment from Tucson to Phœnix.   For at that time the shows were in the exclusive possession and control of the owner, exhibiting for six days at Tucson, and the application to the Southern Pacific Company, which was refused, shows, incontrovertibly, that the transportation to Tucson had terminated, and that no other transportation had then been contracted for.   The company itself proved that interstate transportation was not subsequently arranged for until April 3rd certainly—and probably not until April 16th—and then was via another line from Phœnix, after two weeks for exhibition in that city.

The mere intention of the shipper to ultimately continue his tour beyond the State of Arizona did not convert the contemplated intrastate movement into one that was interstate.   The case is ruled by *Coe* v. *Errol*, 116 U. S. 517; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Iowa*, 233 U. S. 334; *Gulf, Colorado & Santa Fe R. R. Co.* v. *Texas*, 204 U. S. 403; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co., ante*, 134.

It is further argued by the plaintiff in error that the

order of the state commission deprived it of its right to make or refuse to make a contract as a private carrier for the transportation of traveling shows, and thereby deprived it of the equal protection of the laws and of its property without due process of law.

It would be enough to say of this contention that no such claim was asserted in the answer of the company in the state court, or even in the assignments of error in this court, and that, therefore, it cannot be considered here. But this omission is not an oversight, for the record shows that it had been the prior practice of the plaintiff in error to transport such shows on application under special contract—a short time before it had transported another show and the year before it had accepted these same shows for transportation—and that the order of the commission was: "It is understood . . . that the . . . company may enter into a contract covering this transportation, the terms of which shall not be in substantial variance with the contract now existing between the Arizona Eastern Railroad Company and Sells-Floto Shows Company, with respect to details, as to responsibility, service, and conditions," which contract was on file with the commission, and was dated March 4, 1914. This form of contract was one also used by the Southern Pacific Company.

Thus this second claim, obviously an afterthought, is so clearly without merit that it cannot be considered, and the judgment of the Supreme Court of Arizona is

*Affirmed.*