459 P.2d 719

**EBASCO SERVICES INCORPORATED,**
a New York corporation, Appellant,

v.

**ARIZONA STATE TAX COMMISSION,**
a body corporate and politic,
et al., Appellees.

Nos. 9652, 9657.

Supreme Court of Arizona.

In Banc.

Oct. 17, 1969.

Snell & Wilmer, by Edward Jacobson, Phoenix, for appellant.

Darrell F. Smith, Former Atty. Gen., Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellee.

HAYS, Justice.

The Court is herein concerned with two separate actions which involve the same litigants and essentially the same issues. For purposes of the opinion, we shall consider them together and unless otherwise noted, our decision applies to both causes.

The appellant, plaintiff below, Ebasco Services, Incorporated, hereinafter referred to as Ebasco, is a corporation engaged in the construction of large power generating plants. These cases are concerned with two projects contracted for between Ebasco and Arizona Public Service, a public utility company, hereinafter referred to as APS, for the engineering, design and construction of such facilities.

As a consequence of an audit, the Arizona State Tax Commission, hereinafter referred to as the Commission, levied a tax assessment against Ebasco for additional Transaction Privilege and Education Excise taxes in the amount of some $390,000. The levy was paid under protest and the instant actions were brought for the recovery of said tax.

There being no factual dispute, the cases were tried by cross motions for summary judgment. Ebasco herein appeals from the judgments of the trial court which deny in part and grant in part its motions.

Ebasco does not contest its taxability as a "contractor" within the meaning of the statute. The heart of the issue is the inclusion in the tax base of certain equipment supplied to the contractor (Ebasco) by the owner (APS) for incorporation into the projects. These items of equipment, valued at over 40 million dollars were purchased in the name of APS by Ebasco as purchasing agent.

A.R.S. § 42–1309 is the statutory authority for the levy of the taxes in question. This section provides:

"Levy of tax; purposes; distribution: A. There is levied and there shall be collected by the commission * * * annual privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be in accordance with the schedule as set forth in §§ 42–1310 through 42–1315."

A.R.S. § 42–1310, subsec. 2(i) states that the tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rate:

"2. At an amount equal to one per cent of the (gross proceeds of sale or) gross income from the business upon every person engaging or continuing within this state in the following businesses:

(i) Contracting, but payments paid by the contractor for labor employed in construction, improvement or repairs shall not be subject to such tax." (parentheses added.)

It was stated in the uncontradicted record of the Tax Commission hearing, that when a utility, such as APS, undertakes to build a new plant, it is common practice to deal through a purchasing agent for the acquisition of the specialized equipment that is required in such projects. This practice comes about as a result of many factors. There has been presented for the Court's consideration a list of significant business reasons, unrelated to tax avoidance, which we find to be persuasive on the issue of the business justification for the purchasing agent relationship.

Ebasco has several divisions under its corporate umbrella performing a complete range of services within this industry. For example, in addition to the construction division, there is a division which specializes in the engineering and design of steam-electric generating facilities; and being a large concern, it has, like others in the field, a department which offers the purchasing services referred to above.

The record shows that these corporate divisions and their functions are separate and distinct. While it is probable that a firm awarded the engineering contract will also do the construction contracting, it was stated that it is not unusual in this industry for a principal to hire one firm to do the engineering and another to do the construction. Like the engineering and construction phases, the record indicates that the construction and purchasing may or may not be handled by the same firm.

The Commission, in assessing the tax, has taken the position that the purchasing agency is in substance a financing arrangement entered into for the benefit of Ebasco. It is argued that the agency ceases to exist once the purchase is complete and that ownership in the equipment shifts into the hands of Ebasco at the instant when it is received by Ebasco, as contractor, for use in the project. This ownership is only temporary however, and it is urged by the Commission that this title reverts to APS when the equipment technically becomes a fixture. Under the Commission's theory of the case, this brief ownership is tantamount to a "gross receipt" in the hands of Ebasco and is therefore sufficient for the attachment of tax liability.

It is Ebasco's position that there has been an affirmative showing of the bona fides of the purchasing agency and that nothing has been pointed out which raises any suspicion of a tax avoidance motive. Under the agency theory, materials and equipment are furnished by the owner for use by the contractor. Since there is no purchase by the contractor with an ultimate reimbursement by, or resale to, the owner, there is nothing received by the contractor in the nature of a "gross receipt" either in an accounting or in a tax sense. See, Arizona State Tax Comm. v. Parsons-Jurden Corp., 9 Ariz.App. 92, 449 P.2d 626 (1969), petition for review by the Supreme Court denied.

We cannot accept the Commission's argument. To say that there has been a change of ownership under these facts is an erroneous statement of the law. See 17A C.J.S. Contracts § 516, pp. 937–938, wherein the subject of ownership in materials is discussed.

"When the builder is to furnish the materials and labor for the performance of a contract requiring the erection of structures on the land of the owner, the materials generally remain the property of the builder until they are affixed to the land of the owner or are delivered to, and accepted by, him as his property. A transfer of title is not sufficiently shown by the mere fact that the materials are purchased by the builder with the intention of working them into the structure * * *.

*Materials furnished by the owner which the builder is merely to use in the performance of the work remain the property of the owner, and the same is true of materials purchased by the builder as the agent of and on the credit of the owner.* * * *" (Emphasis added.)

There has been no change of ownership and this Court will not create such a legal

fiction for the sole purpose of attaching tax liability.

The second argument of the Commission is more to the point. The Commission urges a theory of "constructive" gross receipts based on principles similar to those which, for tax purposes, hold for the recognition of income by individuals who have not actually received any payments. In support of this theory, the Commission has correctly stated several valid principles of "income" tax law. It has been stated that gross income may include amounts which are never received by a taxpayer where such amounts have been used to reduce an obligation of the taxpayer. Anders v. State Board of Equalization, 82 Cal.App.2d 88, 185 P.2d 883, 885 (1947). Also, that amounts received may constitute gross income to the recipient even though such amounts are received by the recipient as an offset against obligations owed by the recipient to the one against whom the offset was made. This is true even though the recipient realizes no net profit as a result of the transaction. Walgreen Co. v. Gross Income Tax Div., 225 Ind. 418, 75 N.E.2d 784, 786, 1 A.L.R.2d 1014 (1947).

Applying these principles to the instant cases, the Commission reasons that the materials and equipment which were acquired under the agency constituted a part of APS's advance payment to Ebasco under the contract. It is urged that the agreement by APS to furnish the equipment constitutes a part of the consideration agreed upon between the parties.

■ This argument is unsupported either in law or in fact. There is no inherent or common law contractual obligation on the part of the contractor requiring him to supply the materials. In the absence of such an obligation, this term of the contract will neither be construed to be, nor be treated as, consideration for the contract.

The statute requires that the tax be assessed at a rate equal to one per cent of the GROSS INCOME from the business of contracting. "Gross income" is defined by ARS § 42-1301, subsec. 6 to mean "the GROSS RECEIPTS of a taxpayer * *." Unfortunately, the statute does not adequately define the term, GROSS RECEIPTS. The definition in § 42-1301 only applies to gross receipts from retail sales. Therefore, this Court is faced with the task of defining this term of art.

The Commission urges a broad interpretation. We are asked to hold that funds, paid to manufacturers by APS through their purchasing agent authorized to draw on an APS account, constitute "gross receipts" to Ebasco.

■ This Court has previously stated that where there is ambiguity, a revenue statute should be construed liberally in favor of the taxpayer and strictly against the state. Alvord v. State Tax Comm., 69 Ariz. 287, 213 P.2d 363; Corporation Comm. v. Equitable Life Assur. Soc. of U.S., 73 Ariz. 171, 239 P.2d 360. In the Equitable case, supra, at page 178, 239 P.2d at page 364 this Court held that, "inasmuch as a taxing statute must be strictly construed, we cannot extend its application to include something not specifically covered by the language thereof." In the case of Arizona State Tax Comm. v. Staggs Realty Corp., 85 Ariz. 294, 297, 337 P.2d 281 (1959), we stated that, "it is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication."

In 38 C.J.S. Gross, p. 1082, it is said concerning GROSS RECEIPTS: "Gross receipts. Ordinarily, the gross amount of cash received; but its construction and meaning depend on the context and the subject matter, and accordingly it may be construed to mean actual cash collected on particular obligations, together with moneys in hand due to obligors and credited on such indebtedness * * *." Webster's New International Dictionary, Second Edition, among other definitions for the

word "receipt" states the meaning to be: "that which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like; usually in pl; as, the gross receipts."

■ The proper measure of the tax imposed on the privilege of doing business as a contractor within this state has been established by the legislature to be the GROSS RECEIPTS from that business. Giving a reasonable and ordinary construction to that term, we hold that owner supplied equipment is not a gross receipt for Transaction Privilege and Education Excise taxation.

We now turn to the remaining issues raised by these appeals.

In the case of the Cholla plant contracts, case number 9657, the duties of purchasing agent, engineer and contractor were set forth in three separate documents.

The Commission's assessment with reference to the Cholla project includes in the figure of "gross receipts from contracting," receipts which were generated by the engineering contract. The Commission reasons that the engineering and purchasing were integral parts of Ebasco's construction business, and that because of the broad statutory base on which the tax is imposed, a different result should not be achieved by the simple expedient of dividing a construction contract into its component parts. They argue that A.R.S. § 42–1309 imposes the tax on the amount or volume of business transacted rather than on the form of the contract employed by the parties.

■ Prior to the 1968 amendment to the article, the REVISED STATUTES did not define the term "contractor." Under the normal circumstances a subsequent addition to the section would be given prospective application only. In the absence of any prior definition of this term, however, we consider it to be appropriate to look to this statute when searching for an expression of the earlier legislative intent.

A.R.S. § 42–1301, subsec. 4 (new)

" 'Contractor' is synonymous with the term 'builder' and means a * * *

corporation * * * who (which) undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railway, excavation or other structure, project, development or improvement, or to do any part thereof, including * * *."

It is obvious that engineering and design does not fall within any of the statutory categories which would ordinarily identify one as a contractor or builder.

■ It was stated above that the engineering services are not uniformly performed by the construction contractor on any given project. Therefore it is not a true statement of the facts to say that the engineering and design are integral functions of Ebasco's *contracting* business. The Commission states in its brief that § 42–1309 measures tax liability by the scope of the business; that it is by the substance of what is done rather than by some tenuous standard such as the form of the contract. We do not believe that this statute goes so far as to tax all activities of a corporation based on the fact that one of the activities engaged in is that of contracting. If the legislature intends to levy a tax on the business of engineering and design, let them state this clearly and unmistakably in the statute.

■ We hold that the gross receipts from the engineering and purchasing agency contracts are not taxable under A.R.S. § 42–1310, subsec. 2(i).

There is one issue remaining for our consideration. That is whether the wages paid to security employees is a labor cost deductible for purposes of arriving at a figure of "taxable" gross receipts. See § 42–1310, subsec. 2(i) as set out above.

The briefs of the litigants are not helpful on the question.

Ebasco would have us exclude this cost from gross receipts on the ground that the

Commission's Regulations contain a list of expenses which the Commission specifically states are *not* excludable. Since guard labor is not listed, the argument is that by its silence the Commission has by implication ruled it to be a deductible item. The Commission on the other hand, cites out of context the language of a recent case in support of its position. Neither of these arguments is persuasive.

The Court of Appeals cursorily examined a similar question in J. H. Welsh & Son Contracting Co. v. Arizona State Tax Comm., 4 Ariz.App. 398, 420 P.2d 970 (1966); affirmed 102 Ariz. 443, 432 P.2d 455 (1967), in which the issue was the deductibility from gross receipts of certain employer paid fringe benefits. In denying part of the deductions, the Appellate Court stated:

"We feel that the Legislature wished to limit the deduction to the actual amounts of money spent for the benefit of, or directly to, the men working on the job and not to cover every conceivable expense of the contractor which may in some way arise out of the fact that he has to use employees to conduct the contracting business." 4 Ariz.App. at 404, 420 P.2d at 976.

The statute tells us that the costs of labor "employed in the construction," are not subject to the tax. Without further indication of the legislative intent, we rely on the general rule of construction, cited by the Welsh case, supra, at page 403, 420 P.2d at page 975, wherein it was stated that, "every interpretation shall be against exemptions from taxation statutes." (Citing cases.) Having been presented no reasons to justify a contrary holding, we are compelled to follow the rule. We find that guard wages are not covered by the exclusion.

For the above reasons, cause number 9652 is reversed and remanded to the Superior Court for a ruling on the motion for summary judgment consistent with this opinion. Cause number 9657 is reversed

in part and affirmed in part and is hereby remanded for a ruling consistent herewith.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.