548 P.2d 1162

**STATE TAX COMMISSION of Arizona, the State of Arizona, and L. Waldo DeWitt, John M. Hazelett and Robert A. Kennedy, as members of and constituting the State Tax Commission of Arizona, Appellants,**

v.

**HOLMES & NARVER, INC., a California Corporation, Appellee.**

No. 12019.

Supreme Court of Arizona,
In Banc.

April 27, 1976.

Rehearing Denied May 25, 1976.

Bruce E. Babbit, Atty. Gen., Gary K. Nelson, Former Atty. Gen., James D. Winter, Asst. Atty. Gen., Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellants.

Allen, McClennen & Fels, by Louis McClennen, Phoenix, for appellee.

ROBERT C. BROOMFIELD, Judge of the Superior Court:

This is a suit to recover a tax paid under protest after the State Tax Commission levied an additional assessment on a transaction privilege tax. The matter was submitted to the trial court on a motion for summary judgment supported by stipulated facts. Appellants State Tax Commission of Arizona, the State of Arizona and the members of the Tax Commission, hereinafter all referred to as the Commission, appeal from the judgment of the trial court granting summary judgment in favor of the appellee Holmes & Narver, Inc.

Holmes & Narver, a California corporation with offices in Los Angeles and no offices in Arizona, was founded in 1933 exclusively as a design and engineering concern. Prior to 1945 it had not engaged in the construction business and was not a contractor as defined under A.R.S. § 42–1301(3). Subsequent to 1945, Holmes & Narver began engaging in construction activities but only as an adjunct to its professional design and engineering activities and except on three occasions has never entered into a construction contract unless it was awarded the design and engineering contracts. By far the greater proportion of its employees (other than on-site laborers whose activities are not taxable under the act) are professional designers and engineers rather than employees engaged in construction activities. In its Los Angeles office the number of employees in its design and engineering division will range between 200 and 300, whereas the number of employees in its construction division will range between five and ten.

Kennecott Copper Corporation solicited a proposal from Holmes & Narver to design and engineer a silicate ore leach plant, a sulphuric acid plant and a precipitation plant. Prior to entering into formal contracts it was determined that Holmes & Narver should also construct these three plants. Thereafter the parties entered into two separate cost plus fixed fee contracts, one to design, engineer and construct the leach and acid plants and the other to design, engineer and construct the precipitation plant.

In the performance of its design and engineering activities, Holmes & Narver expended more than 273,000 man hours and produced in excess of 1,300 final drawings and a large number of preliminary drawings. Substantially all of the design and engineering services were performed outside of the State of Arizona.

Out of the total receipts paid to appellee under the contracts it paid a tax on $5,245,000 which it contended were the taxable receipts attributable to the business of contracting. It excluded from the amount it reported as taxable, receipts totaling $3,420,223.30, which were paid to it by Kennecott for design and engineering

services. Out of a total fee of approximately $1,100,000, $474,709.61 was paid as a fixed fee for design and engineering services. All of the charges for design and engineering services for which Holmes and Narver were reimbursed by Kennecott were segregated and separately stated on Holmes & Narver's books of account.

The Commission assessed Holmes & Narver additional taxes on the ground that it had understated its income from the business of contracting and after an adverse decision by the Commission, Holmes & Narver paid the sum of $50,249.28 under protest which is the amount awarded Holmes & Narver by the trial court.

The trial court concluded that the $3,420,223.30 received by Holmes & Narver for design and engineering services were payments for professional services which are not taxable as gross receipts under A. R.S. § 42–1310 2(i), and that these services being performed outside of the state of Arizona are not taxable as the applicable statutes only impose a tax on business within the State of Arizona.

We are faced with the questions of whether receipts for design and engineering services are taxable as gross receipts pursuant to A.R.S. § 42–1310 2(i), whether such receipts are non-taxable as services being performed outside of the State of Arizona and whether they are non-taxable because they are unconstitutional as violative of the commerce clause and the due process clause of the Federal Constitution.

The Commission contends that under the facts of this case design and engineering services were so interwoven into the operation of the construction business that they are an essential part of that business and cannot appropriately be regarded as non-taxable on the ground that these particular services constitute a separate business. It argues that such a practical rule is necessary for the due administration of the tax system in order to prevent a flood of arguments over trivialities and to prevent taxpayers from breaking transactions into

their constituent elements and arguing for or against taxability as the case may be. The State says essentially that the contract should be looked at as a package for the purpose of taxability and ought to be resolved on the basis of the predominant nature of the activity which produced the income i. e., in this case, the business of contracting.

Holmes & Narver relies principally upon this Court's decision in *Ebasco Services, Inc. v. Arizona State Tax Commission*, 105 Ariz. 94, 459 P.2d 719 (1969) contending that design and engineering services are professional services which are not taxable and that the nature of the receipts, not the form of the contractual relationships, should govern taxability. It contends that where non-taxable services are substantial the fact that they are included in one contract is not controlling.

Since we feel this case is controlled by our decision in *Ebasco*, a brief recitation of the facts in that case seem appropriate. Arizona Public Service Company engaged Ebasco to construct two power generating plants. Ebasco had several divisions under its corporate umbrella performing a complete range of services within its industry including a division which specialized in engineering design of such facilities, a construction division and a division to purchase services. With respect to one of the plants the duties of purchasing, engineering and contracting were set forth in three separate contract documents. In that case the Commission argued that:

"the engineering and purchasing were integral parts of Ebasco's construction business, and that because of the broad statutory base upon which the tax is imposed, a different result should not be achieved by the simple expedient of dividing a construction contract into its component parts. * * * A.R.S. § 42–1309 imposes the tax on the amount or volume of business transacted rather than on the form of the contract employed by the parties."

It further contended the statute:

"measures tax liability by the scope of the business; that it is by the substance of what is done rather than by some tenuous standard such as the form of the contract." *Ebasco Services, Inc. v. Arizona State Tax Commission,* 105 Ariz. at 98, 459 P.2d at 723.

We held that the placing of engineering and contracting functions in separate contract documents was not for the purpose of tax avoidance, that design and engineering services clearly did not fall within the purview of the statutory definition of a "contractor" and that design and engineering services were non-taxable.

The Commission argues that *Ebasco* does not control in this case because both engineering and design services and construction services were included in a single contract relying on *Trico Electric Cooperative, Inc. v. State Tax Commission,* 79 Ariz. 293, 288 P.2d 782 (1955) in which it contends we held that activities which are incidental in the sense that they are inseparable from the principal business and interwoven in the operation thereof to the extent that they are in effect an essential part of the major business cannot be taxed as a separate business.

■ The issue which we must decide is whether gross receipts of a substantial amount received under a cost plus fixed fee contract which does not separately price its constituent parts but which are contemplated to be and are segregated and separately itemized and billed for can be severed for the purpose of the imposition of the transaction privilege tax.

■ The parties stipulated that the fixed fee for design and engineering services was $474,709.61. While there is some dispute whether this fee was fixed by the contract or established by Holmes & Narver's accounting methods, it is undisputed that detailed accounting records were required of and maintained by Holmes & Narver for the purpose of billing to Kennecott, verification by Kennecott and, as it turned out, audit by the Commission. There is no hint or suggestion of accounting manipulation or impropriety by Holmes & Narver or that the segregation of accounts for design and engineering costs on the one hand and construction costs on the other was for a tax avoidance purpose. It is axiomatic that under a cost plus fixed fee arrangement in a project so large detailed accounting records would have to be maintained. Holmes & Narver could not have complied with the contract without such accounting records. Since about forty-three percent of the total fixed fee was attributable by Holmes & Narver to design and engineering services, it is clear that the design and engineering services were substantial in relation to the other services required by the contract.

Approximately one-sixth of the total man hours spent on the project were for design and engineering work. Although in the more typical situation a design and engineering firm separate from the contracting firm is engaged to do the design work, it is clear that Holmes & Narver was engaged in this case primarily because of their design and engineering expertise. Under the circumstances it cannot be said that the design and engineering services were incidental to the construction contract.

In view of this Court's decision in *Ebasco,* it is clear that the additional assessment can only be upheld if we conclude that the method by which the parties' contract is determinative of taxability, i. e., that there is a difference for tax purposes between a project which the parties contemplate as a single undertaking but for which they enter into separate contracts for design and construction and that same project in which the parties combine these two functions into one contract but contemplate and do separately account and bill for design and engineering and construction services. Such a conclusion would honor substance over form and invite the very argument the Commission eschewed in *Ebasco,* that a different tax result

should not be able to be achieved by the simple expedient of dividing a construction contract into its component parts.

In certain circumstances taxable and non-taxable activities can be included in the same contract. In *Goodyear Aircraft Corp. v. Arizona State Tax Commission*, 1 Ariz.App. 302, 402 P.2d 423 (1965), the Court of Appeals held that in a single contract to test stress factors in airplane subassemblies, the value of the subassemblies destroyed and the value of the engineering services in the destruction tests were separately stated in a single contract for which there could be separate tax impact. In the instant case a similar situation exists.

 The tax is on the contracting business, not merely on the form of a series of contracts performed in the pursuance of that business. Here that business is twofold: design and engineering, and construction. Where it can be readily ascertained without substantial difficulty which portion of the business is for non-taxable professional services (design and engineering), the amounts in relation to the company's total taxable Arizona business are not inconsequential, and those services cannot be said to be incidental to the contracting business, the professional services are not merged for tax purposes into the taxable contracting business and are not subject to taxation.

We conclude that under a single contract to design and construct a facility where the consideration to be paid is cost plus a fixed fee, receipts for design and engineering services of a substantial nature which are required to be performed and for which the parties contemplate that a separate, detailed accounting will be made, are not subject to the transaction privilege tax.

Nor do we alter our decision in *Duhame v. State Tax Commission*, 65 Ariz. 268, 179 P.2d 252 (1947) that the tax is to be measured by all of the business activity of the taxpayer rather than merely a part of it. In *Ebasco* and here we merely conclude that design and engineering services are not contracting which is the business which is the subject of the tax. The Legislature has not said that all business is the subject of the transaction privilege tax, only those businesses specifically set forth in the statute.

In view of our decision that the engineering services in this particular contract are not subject to taxation it is unnecessary to decide the constitutional questions raised nor whether the out of state performance of design and engineering services affect taxability.

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.

CAMERON, C. J., did not participate in the determination of this matter and ROBERT C. BROOMFIELD, Judge of the Superior Court, sat in his stead.