872 P.2d 206

**VALENCIA ENERGY COMPANY**

v.

**ARIZONA DEPARTMENT OF REVENUE.**

No. TX 93–00277.

Tax Court of Arizona.

April 4, 1994.

252

Stephen C. Newmark, Phoenix, for plaintiff.

Attorney Gen. by James M. Susa, Phoenix, for defendant.

SCHAFER, Judge.

Tucson Electric Power Company (TEP) built a coal-fired electric plant in Springerville, Arizona which the Alamito Company runs. The Valencia Energy Company, a wholly owned subsidiary of TEP, contracted with Alamito to supply all the coal needed to operate Alamito's burner. The contract requires the coal to be a certain size and to have limited amounts of moisture, ash, and sulfur.

Valencia buys the coal from mines in New Mexico. It then ships it to Springerville where Valencia readies it for burning by Alamito. After the coal is burned, Valencia removes the ash left behind.

The Arizona Department of Revenue audited Valencia's books for the period of November 1985 through March 1990 and imposed an additional assessment of $4,979,-216.85, plus interest.[1] During those years, Valencia paid transaction privilege taxes only on the activity of procuring the coal—not on the activities of transporting and then handling it before it was used by Alamito. Valencia thought (and argues here) it was conducting three separate businesses—procurement, transportation, and handling—not just one. After running the audit, the Department disagreed; it believed Valencia's sale of coal to Alamito (including all related activities) was one business. The issue then is whether, during that period, Valencia conducted one or three businesses.

Valencia also argues that whether or not it is conducting three businesses, the Department should be estopped from collecting the additional assessment because the Department led Valencia to believe only the activity of procuring the coal was taxable. Finally, Valencia argues that if the Department is not estopped, a portion of Valencia's receipts fall within an exemption from taxation. The Court disagrees with Valencia on all three points.

1. The Department did not, and may not, impose penalties on the additional assessment since Valencia failed to pay the tax initially due to the Department's written advice concerning the taxability of certain of Valencia's activities. See A.R.S. § 42–139.02.

## ANALYSIS

The first question that should be answered is whether the Department is estopped from imposing the additional assessment. If it is, the Court need not decide whether Valencia conducts more than one business and whether it is entitled to an exemption.

### A. Estoppel

█ Valencia's argument is based upon its reliance on the informal written opinion of Department employees, given in 1986, that only Valencia's activity of procuring the coal was subject to the transaction privilege tax. Valencia contends that because of its reliance it suffered damage and prejudice since it failed to collect the cost of the taxes from Alamito and cannot now go back and recoup that cost. The Department, therefore, should be estopped from collecting the tax for past years.[2] The Department does not dispute that Valencia relied upon representations of Department employees and that it did not collect the tax from Alamito. Nevertheless, the Department claims, it is not estopped.

Even admitting Valencia relied on the representations and was damaged, its argument goes directly against both this Court's recent holding in *PCS, Inc. v. Ariz. Dept. of Rev.*, 176 Ariz. 628, 863 P.2d 920 (Tax 1993), and well-settled law which refuses to apply estoppel to the Department in a situation such as this.

Arizona courts have repeatedly found that estoppel will not be applied against taxing authorities except in rare and unique circumstances. The rule is clear:

[T]here can be no estoppel involved against a sovereign state. The failure of the tax commission to attempt to collect taxes now sought to be collected from plaintiff for a period of years constitutes no defense to their collection.

2. Valencia also asserts that by now seeking to collect taxes for prior years the Department is improperly retroactively changing its administrative decision. To support its position Valencia has cited cases dealing with the retroactive application of regulations, case decisions, and laws. While it is true that there are strict limitations on the retroactive application of regulations, case

*Arizona Tax Commission v. Dairy & Consumers Cooperative Association*, 70 Ariz. 7, 14, 215 P.2d 235, 240 (1950). The refusal to apply estoppel to taxing authorities is based upon the fundamental principle that:

In the matter of collecting revenues, the state is acting in its governmental or sovereign capacity, and ordinarily there can be no estoppel. Were this not the rule the taxing officials could waive most of the state's revenue.

*Crane Company v. Arizona State Tax Commission*, 63 Ariz. 426, 441, 163 P.2d 656, 662 (1945). Valencia's estoppel argument is also negated by the Arizona Constitution, Article 9, section 1, which provides "[t]he power of taxation shall never be surrendered, suspended, or contracted away." These principles are applicable here.

Had Valencia not been misled by an improper interpretation of the applicability of the tax, it might have passed this tax on to Alamito. However, if the Department is estopped from collecting a tax which is applicable to Valencia's operations, then the taxing officials would have, in effect, acted to waive the Department's right to collect the tax. Clearly, this is not allowable.

Valencia points to *Tucson Electric Power Company v. Arizona Department of Revenue*, 174 Ariz. 507, 851 P.2d 132 (1993) for support. That case doesn't help. The rule of law from that case is quite narrow and Valencia does not come within its scope. The *Tucson* court limited its holding by noting:

We have previously pointed out in this opinion a critical distinction between the situation presented in this case [where "the taxpayer is not relying upon estoppel to avoid the application of a taxing statute to activities contemplated by the statute"] and the situations presented in prior Ari-

decisions and laws, none of these are involved here. The Department did not change a regulation or a rule, nor did it adopt a new taxing provision. The Department has merely changed a previous informal interpretation of existing laws and regulations. Nothing is being "retroactively" applied.

zona decisions that have refused to permit the application of estoppel against the taxing authorities. In those cases, the application of estoppel would have directly and substantially impinged upon the state's sovereign power to levy taxes, since the representations or conduct of the taxing authorities relied upon by the taxpayer related directly to whether the taxpayer's activities were taxable.

*Id.* at 516, 851 P.2d at 141.

And:

All the Arizona tax decisions that we have found in which the court has refused to apply the doctrine of estoppel have involved situations in which the intent of the statute was to impose a tax upon the activities engaged in by the particular taxpayer. In seeking to avoid payment of the tax, imposed by the statute, the taxpayer was relying upon past actions or representations of taxing authorities to the effect that the statute did not impose a tax upon the taxpayer's activities. In each case, the court refused to permit the claimed action of the state taxing authorities to defeat the intent of the legislature to impose a tax on the very activities engaged in by the taxpayer.

*Id.* at 515, 851 P.2d at 140.

Valencia relied upon Department representations that the tax was not applicable (to some activities). Estoppel does not apply here. Therefore, we must now determine whether, during the relevant period, Valencia's activities of procuring, transporting, and handling the coal were all part of one taxable business.

## B. One Business or More?

■ Arizona places a transaction privilege tax on the business of selling things at retail and it measures the tax by the gross proceeds of the sales. A.R.S. § 42–1310.01(A). "Business" means "all activities or acts, personal or corporate, engaged in·or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales." A.R.S.

§ 42–1301(1). No deductions are allowed for cost of property sold, materials used, labor or services performed, interest paid, losses or any other expense. A.R.S. § 42–1301.

Since Valencia admits that its act of procuring the coal is taxable, the issue is whether it may segregate its business activities for tax purposes and avoid taxes on the activities of transporting and handling the same coal. Valencia says it may and points to two Arizona cases, *State Tax Commission v. Holmes & Narver, Inc.,* 113 Ariz. 165, 548 P.2d 1162 (1976) and *Ebasco Services, Inc. v. Arizona State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969), as support. However, those cases do not support Valencia's argument.

*Ebasco* involved a taxpayer who had three separate contracts with a single client—one contract for engineering services, one for contracting services, and a third for design services. At that time only the contracting services were subject to transaction privilege taxes. The Tax Commission argued the design and engineering services were an integral part of the contracting services, and as such, the receipts from each were taxable under the contracting activities and not subject to segregation. The Arizona Supreme Court reviewed the taxing statutes, including the definition of "contractor," and decided that design and engineering services were not uniformly performed by construction contractors and thus, were not an "integral" part of the taxpayer's contracting business. *Ebasco Services, Inc.,* 105 Ariz. at 98, 459 P.2d at 1166.

*Holmes & Narver* involved a design and engineering firm which also acted as a contractor. Again the taxing authorities attempted to tax the receipts from the design and engineering services, arguing the engineering and design activities were an inseparable part of the principle business of contracting. However, the Arizona Supreme Court followed its decision in *Ebasco* holding that engineering services were not something contractors, by definition, perform and thus, could not be included in the taxable business of contracting. *Holmes & Narver,* 113 Ariz. at 168–69, 548 P.2d at 1165–66. The Court

utilized a three part test in determining if the taxpayer was engaged in two separate businesses for tax purposes:

> Where it can be readily ascertained without substantial difficulty which portion of the business is for non-taxable professional services ... the amounts in relation to the company's total taxable Arizona business are not inconsequential, and those services cannot be said to be incidental to the contracting business, the professional services are not merged for tax purposes into the taxable ... business and are not subject to taxation.

*Id.* at 169, 548 P.2d at 1166.

Here, Valencia's situation does not satisfy the third prong—transporting and handling the coal are incidental to the contracted for business of supplying Alamito with coal. The contract required Valencia to tender for delivery only that fuel which met stringent contract specifications as to size and moisture, sulfur, and ash content. In order to deliver the coal in accordance with its contractual obligations, Valencia was required to get it, transport it, test it to ensure it met contract specifications, crush it to contract specified size, then send it into a specified burner, and finally remove the ash left after burning. Each of these steps was necessary and incidental to enable Valencia to perform its principle contractual duty of delivering ready-to-burn coal. There was only one business. Valencia cannot now parse its activities to avoid the tax.

Is Valencia entitled to an exemption for part of the tax?

## C. Freight Cost Exemption from Taxation

 As a final argument Valencia claims that if its entire business proceeds are subject to tax, it is entitled to an exemption under A.R.S. § 42–1302 for certain freight costs.

Section 42–1302 provides in pertinent part:

A. For the purpose of this article the total amount of gross income, gross receipts or gross proceeds of sale shall be deemed to be the amount received, exclusive of:

\*　　\*　　\*　　\*　　\*　　\*

2. Freight costs billed to and collected from a purchaser by a retailer for tangible personal property which, upon the order of the retailer, is *shipped directly* from a manufacturer or wholesaler *to the purchaser.*

A.R.S. § 42–1302(A)(2) (emphasis added).

When interpreting a statute, this Court will examine the language to be interpreted; where that language expresses a clear unequivocal standard, the Court will interpret the statute accordingly, and look no further for guidance. *Rio Rico Properties v. Santa Cruz County,* 172 Ariz. 80, 834 P.2d 166 (1992). Here, the statute is clear on its face.

To qualify for the exemption the coal must be shipped directly to the buyer, Alamito. That is not what happens here. Before the coal is delivered to Alamito, Valencia receives it, unloads it, and processes it to ensure that it meets the contract specifications. It is only after Valencia does its processing that the coal makes its way to Alamito's burners. Clearly, the coal is not shipped "directly" to Alamito. Consequently, Valencia is not entitled to the exemption.

## CONCLUSION

Valencia's business is one of retail sales of coal. This business includes the transporting and handling activities necessary to deliver the required coal to Valencia's customer; therefore, the entirety of Valencia's coal sales receipts are taxable. The Department is not estopped to now collect the tax unpaid on Valencia's receipts from the transporting and handling aspects of its business. Additionally, Valencia does not fall within the exemption from transaction privilege taxes for any of the freight costs it incurred in its operations. In light of the foregoing, Valencia must pay the additional assessment levied by the Department.

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment.

**IT IS FURTHER ORDERED** denying Plaintiff's Cross–Motion for Summary Judgment.

**IT IS FURTHER ORDERED** denying Defendant's Motion for Award of Attorneys' Fees Pursuant to Rule 56(g).

This opinion is not a final, appealable judgment; other orders will follow. *See Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 821 P.2d 161 (1991).