815 P.2d 929

**STILLWELL GRAND PRIX MOTORS, INC., Plaintiff–Appellant,**

v.

**The CITY OF TUCSON, a body politic and corporate, Defendant–Appellee.**

**No. 1 CA–TX 90–003.**

Court of Appeals of Arizona,
Division 1,
Department T.

Aug. 13, 1991.

Richards & Eisenstein by Barbara E. Fisher, Tucson, for plaintiff-appellant.

Frederick S. Dean, City Atty. by Elisabeth Sotelo, Asst. City Atty., Tucson, for defendant-appellee.

## OPINION

BROOKS, Judge.

Stillwell Grand Prix Motors, Inc., (Stillwell) appeals from a summary judgment upholding an assessment of business privilege taxes by the city of Tucson. The tax, which took the form of a retail sales tax, was imposed upon the gross proceeds of sales of BMW and Saab automobiles that were delivered to their purchasers in Europe. On appeal, Stillwell argues that its activities in conjunction with the European delivery program were not sales within the meaning of the Tucson Code provisions governing the retail sales tax. It maintains that BMW and Saab were the sellers within the meaning of those provisions and that it could not be assessed retail sales taxes on sales that it did not make. It alternatively argues that even if the retail sales tax did apply to the activities in question, it had no tax liability because the activities fell within an exemption from the tax. Finally, it argues that if its activities were subject to the tax, they were only taxable to the extent of the commissions that it received upon them. Because we find that Stillwell was not the seller of the European delivery cars within the meaning of the applicable Code provisions, we reverse without reaching the remaining arguments.

## FACTUAL AND PROCEDURAL HISTORY

Stillwell is a luxury car dealership located in Tucson, Arizona. It is an authorized sales and service representative of the North American divisions of BMW and Saab–Scania. As such, it participates in a European delivery program that both companies offer to their customers. The program is aimed at persons who are planning to purchase a BMW or Saab and who are also planning to take a trip to Europe. It enables them to order a car in the United States, pick it up in Europe, and use it while they are there. BMW and Saab arrange to have the cars registered and insured in Europe and to have them shipped to the United States when the purchasers' European trips are completed.

Customers who decide to participate in the European delivery program sign purchase order forms at the Stillwell dealership. Stillwell forwards the completed forms to BMW's North American headquarters in New Jersey or to Saab's North American headquarters in Connecticut. BMW and Saab then process the orders and send the customers an acceptance or a rejection. If an order is accepted, Stillwell receives the purchase price from the customer and records the transaction on its books as it would any other sale. It then forwards the payment to BMW or Saab after deducting its commission. Stillwell never has possession of or title to the cars sold through the European delivery program. Both possession and title pass directly from the car companies to the purchasers in Europe.

Between August 1, 1984, and July 31, 1988, Stillwell arranged seventeen sales under the European delivery program. It did not report these sales to the city on its business privilege tax returns because it believed that they fell within the "out-of-city" exemption to the retail sales tax. *See* Tucson Code §§ 19–100 and 19–465(b).[1] The city audited Stillwell's returns for the period in question and determined that the sales did not fall within the exemption. It

---

1. Section 19–100 of the Tucson Code provides in pertinent part as follows:

    "Out-of-City Sale" means the sale of tangible personal property and job printing if all of the following occur:

    (1) transference of title and possession occur *without the City; and*

    (2) the stock from which such personal property was taken was not within the corporate limits of the City; *and*

    (3) the order is received at a permanent business location of the seller located outside the City; which location is used for the substantial and regular conduct of such business sales activity. In no event shall the place of business of the buyer be determinative of the situs of the receipt of the order.

    For the purpose of this definition it does not matter that all other indicia of business occur within the City, including, but not limited to, accounting, invoicing, payments, centralized purchasing, and supply to out-of-City storehouses and out-of-City retail branch outlets from a primary storehouse within the City. (Emphasis in original.)

    Section 19–465(b) of the Code exempts out-of-city sales from the retail sales tax.

subsequently issued an assessment based in part upon the sales. Stillwell requested and was granted a hearing. After the hearing, the city redetermined Stillwell's tax liability and assessed it $12,092.64 in taxes and interest on the sales.

Stillwell paid the taxes under protest and initiated an action in superior court to recover them. Stillwell and the city subsequently filed cross-motions for summary judgment. The trial court denied Stillwell's motion and granted summary judgment in the city's favor. This appeal by Stillwell followed.

## DISCUSSION

Section 19–400(a)(1) of the Tucson Code imposes a privilege tax "upon persons on account of their business activities" to the extent provided "elsewhere" in the Code.[2] Section 19–460(a) of the Code imposes a two percent tax upon gross income from the business activity of "engaging or continuing in the business of selling tangible personal property at retail." The term "sale" is defined by section 19–100 of the Code, which provides in pertinent part as follows: " 'Sale' means *any transfer of title or possession, or both,* exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, including consignment transactions and auctions, of property for a consideration" (emphasis added). Section 19–100 defines the term "retail sale" as "the sale of tangible personal property except the sale of tangible personal property to a person regularly engaged in the business of selling such property."

Stillwell argued in the trial court that because it did not transfer title to or possession of the cars sold through the European delivery program to the purchasers, its activities were not sales as that term is defined by section 19–100. It contended that BMW and Saab sold those particular vehicles and that it could not be assessed retail sales taxes on sales that it did not make. The trial court rejected this argument. It also found that Stillwell's activities did not qualify for the out-of-city exemption from the retail sales tax because

Stillwell received the customers' purchase orders in Tucson. With regard to these issues, the court stated as follows:

The Court is of the view that, in resolving the issue presented, the Court should not focus exclusively on elements which constitute the sale of an automobile. It is important to keep in mind that the tax is a transaction privilege tax and not a sales tax. *While it may be true that the Plaintiff was not the seller of the automobile bought by the customer,* it nevertheless arranged, for a consideration, customer participation in a program from which the purchase resulted. This arrangement took place in Tucson where the Plaintiff solicited the transaction, and took the order. This business activity, however it may be described, is not exempt from the Defendant's transaction privilege tax.

(Emphasis added.)

■ We disagree with this analysis. The tax that the city imposed upon Stillwell was measured by "gross income from the business activity . . . of selling tangible personal property at retail." Section 19–460(a). The threshold issue, and the one which we find to be dispositive, is whether Stillwell's activities in conjunction with the European delivery program were retail sales. Because the activities did not include the transference of title to or possession of the cars, we find that they were not "sales" within the meaning of section 19–100. They therefore were not subject to the retail sales tax at issue.

■ The city points out that a business privilege tax is a tax upon the *privilege* of conducting business activities or transactions within a particular jurisdiction rather than a tax upon the activities or transactions themselves. It maintains that such a tax may be imposed upon any taxpayer whose business activities have established a sufficient nexus with the taxing jurisdiction. We agree with these general principles. *See City of Phoenix v. West Publishing Co.,* 148 Ariz. 31, 712 P.2d 944 (1985). However, we do not believe that they are relevant to the dispositive issue in this case. It is undisputed that Stillwell's

**2.** Tucson has adopted the Model City Code.

business activities as a whole were sufficient to subject it to Tucson's business privilege tax. The sole issue here is whether Stillwell's receipts from the European delivery program constituted gross income from "retail sales," thereby subjecting the receipts to the tax imposed by section 19–460(a). Our disposition of this issue makes it unnecessary for us to address the other issues that the parties raise.[3]

### CONCLUSION

We reverse the judgment of the trial court and remand with directions that the court enter judgment in favor of Stillwell.

GERBER, P.J., and HAIRE, J., concur.

NOTE: Retired Judge Levi Ray Haire was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20 and A.R.S. § 38–813.

---

**3.** We note that Section 19–100 defines the term "broker" as "any person engaged or continuing in business who acts for another for a consideration in the conduct of a business activity taxable under this Article, and who receives for his principal all or part of the gross income from the taxable activity." Its corresponding regulation, regulation 19–100.1(a), provides that brokers will be treated as taxpayers whenever necessary to insure proper administration of the Article and to prevent the evasion of taxes. We do not address the application of these provisions to Stillwell's activities because the city concedes that it never attempted to tax Stillwell under them.