939 P.2d 808

The MARRIOTT CORPORATION and Marriott Management Services Corp., its successor in interest, Plaintiffs–Appellants,

v.

STATE of Arizona, ex rel. ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.

No. 1 CA–TX 96–0016.

Court of Appeals of Arizona, Division 1, Department T.

June 12, 1997.

O'Connor, Cavanaugh, Anderson, Killingsworth & Beshears, P.A. by Peter C. Guild, Christopher Robbins, Phoenix, for Plaintiffs–Appellants.

Grant Woods, Attorney General by Sara D. Branscum, Assistant Attorney General, Phoenix, for Defendant–Appellee.

**OPINION**

GERBER, Judge.

The Marriott Corporation and its successor Marriott Management Services Corporation (collectively Marriott) appeal from the tax court's ruling that Marriott was not entitled to a refund of restaurant transaction privilege taxes. Marriott claims that the payments it received from the Theodore Roosevelt Council of the Boy Scouts of America (Council) were tax deductible because providing, preparing, and serving food to the Council's camps constituted, in its view, "[s]ales to a person engaged in business classified under the restaurant classification if the items sold are to be resold in the regular course of the business." ARIZ.REV. STAT. ANN. (A.R.S.) § 42–1310.14(B)(1) (1991). We need to resolve which entity— Marriott or the Council—is the "restaurant" in the broad sense of operating dining or lunch rooms.

## FACTUAL AND PROCEDURAL HISTORY

From August 1, 1988 through July 30, 1992, which both sides call the refund period, the Council operated two camps in Arizona, Camp Geronimo and the R–C Scout Ranch. The Council, a nonprofit organization, charged each camper and group leader fixed fees for attending the camps.

The Council used these fees, in addition to other revenues, to provide meals for most of its staff and campers. It maintained dining halls with tables and chairs and also kitchens equipped with industrial grade cooking appliances. It did not prepare the food. Instead, it contracted with Marriott to provide and prepare the food and to furnish all or most of the employees and services necessary to feed both camps. For its part, Marriott provided its own employees who lived and worked at the camps; it maintained food and beverage inventories to which it retained title; it provided the necessary silverware; it prepared and served twenty camper meals each week; it provided scheduled snacks and it performed the cleaning and sanitation of cooking and eating areas.

Marriott charged the Council weekly per-person fees on a sliding scale reflecting the number of campers attending Camp Geronimo. During the 1992 season the weekly charge was $49.59 per person when there were 751 to 800 attendees and $60.44 per person when there were 101 to 150 attendees. Marriott charged the Council a flat per-person three-day fee for food services at the R–C Scout Ranch. In the 1992 season that fee was $28.04.

During the refund period, Marriott collected restaurant transaction privilege taxes and remitted them to the Department of Revenue (DOR). The total remitted for the refund period was $75,726.62.

Marriott unsuccessfully sought a refund of this sum from DOR. After exhausting its administrative remedies before DOR and Division Two of the Arizona Board of Tax Appeals, Marriott commenced this refund action in the tax court. On cross-motions for summary judgment the tax court ruled that Marriott "does not qualify for exemption under A.R.S. § 42–1310.14(B) or 42–1382(C)(4)." It granted DOR's motion for summary judgment and denied Marriott's cross motion. Marriott now appeals the tax court's ruling. We have jurisdiction in the appeal pursuant to A.R.S. section 12–2101(B). The appeals are assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

## DISCUSSION

For Marriott to qualify for the refund, the Council itself must constitute a restaurant which resells food to its campers as part of its normal business operations. *See* A.R.S. § 42–1310.14(B)(1). Marriott argues that it merely sold food to the Council which, acting as a restaurant, or dining room, resold the food as meals to the campers.

Marriott claims that the Council is in the business of benefiting its members and part of that benefit is receiving food. Marriott stresses that during the refund period the campers received more than 500,000 meals. The Council, it argues, provided dining rooms, tables, chairs, fully-equipped kitchens, and campers to assist in kitchen duties. The Council also had the final approval over the menus and the meal times. Marriott characterizes its own role as a subcontractor, owing duties only to the Council, not to the campers.

Marriott misconstrues the roles that it played. Under the parties' contract, Marriott was an independent contractor with the exclusive right to manage and operate the food service, including placing the food as complete meals before the campers. Marriott provided necessary employees, inventories, silverware, and maintained the kitchen area and equipment. It retained ownership and actual possession of the food inventory and only transferred title and possession of the food at the point of consumption.

■ Because neither title nor possession of the food passed to the Council, Marriott never "sold" the meals to the Council within the meaning of A.R.S. sections 42–1301(13) and 42–1310.14(B)(1). Instead, it retained undiluted ownership and possession of the meals until it transferred them directly to

their ultimate consumers. Its gross receipts on its contracts with the Council were properly taxable as direct sales to the ultimate consumers made in the regular course of Marriott's business under the restaurant classification. *See Stillwell Grand Prix Motors v. City of Tucson,* 168 Ariz. 560, 815 P.2d 929 (App.1991) (auto dealer who acted as its customers' conduit for purchase orders and payments for European cars for delivery in Europe transferred neither title nor possession of cars to customers and was not liable for city business taxes on full gross sale prices).

In doing its cooking for the Council, Marriott acted like a caterer hired to serve meals, food, and drinks on the premises of another. Those who eat the food often pay the catering bill indirectly. For instance, at a charity banquet a person may pay the charity and the charity may pay the caterer. In such instances, a caterer cannot avoid tax liabilities by claiming that the charity is the restaurant. Similarly, Marriott cannot avoid its tax responsibilities by claiming that the Council is the restaurant.

Marriott also misconstrues the role of the Council. Marriott compares the present case to *Arizona Dept. of Revenue v. Phoenix Lodge No. 708, Loyal Order of the Moose, Inc.,* 178 Ariz. 275, 872 P.2d 679 (Tax Ct.1994). Marriott argues that under *Moose* the Council would constitute a restaurant. 178 Ariz. at 276–77, 872 P.2d at 680–81. But *Moose* is factually dissimilar. In *Moose,* the lodge itself operated its own restaurant without a third-party provider for the meals; dues did not pay for the meals but, instead, diners paid singly for each meal; and the lodge provided its own menu, waitress, and full-time cook, and hired others to take care of some of the restaurant chores. The court properly concluded that the lodge was in the business of operating a restaurant.

Unlike *Moose,* the Council hired Marriott to provide food services; those services were paid for by the campers' dues; and the Council did not employ full time staff to operate the food services. Further, the Council exercised minimal day-to-day control over the food services operations; primary supervision was Marriott's responsibility.

Marriott also argues that because one of the camps allowed the campers to opt out of most of the meal plan to save money, the food services were not essential to the camp operation. This argument is unpersuasive because fewer than one percent of the campers took advantage of this option. As a practical matter the camps had no choice but to offer a food service for the vast majority of campers.

DOR argues that the Council was not engaged in a business within the restaurant classification because it actually sold indivisible, unitary "camping packages," and did not prepare food or provide food services. We agree. Our recent decision in *City of Phoenix v. Arizona Rent–A–Car Systems, Inc.,* 182 Ariz. 75, 893 P.2d 75 (App.1995) and the Arizona Supreme Court's decision *State Tax Commission v. Holmes & Narver,* 113 Ariz. 165, 548 P.2d 1162 (1976) illustrate how we view the Council's role.

*Arizona Rent–A–Car Systems* held that the taxpayer's receipts from charges for refueling rental cars returned by its customers with less than a full tank constituted part of its gross receipts from the taxable short-term car rental business and not separate, non-taxable charges. In contrast, *Holmes & Narver* held that the taxpayer's receipts from performing design and engineering services on a job where it was also the prime contractor were not part of its gross income from the taxable contracting business. To determine whether an activity is taxable independently from the company's other activities, both cases applied the three-part analysis in *Holmes & Narver:*

> Where it can be readily ascertained without substantial difficulty which portion of the business is for non-taxable professional services (design and engineering), the amounts in relation to the company's total taxable Arizona business are not inconsequential, and those services cannot be said to be incidental to the contracting business, the professional services are not merged for tax purposes into the taxable contracting business and are not subject to taxation.

113 Ariz. at 169, 548 P.2d at 1166.

Marriott argues that the *Holmes & Narver* test is inapplicable. While the present case

differs in minor respects, the *Holmes & Narver* test helps identify the nature of the parties' business activities. The Council's food service activities are certainly an essential part of the Council's principal business activity of operating recreational and educational camps. While a member of the Moose Lodge could well be a bona fide Moose without ever eating in its restaurant, the Boy Scouts at the Council's camps could not readily participate in the camping experience without the availability of food. These camps could not operate without a food service.

That a sizeable portion of the costs of the camps is attributable to food expenses does not mean the Council constitutes a restaurant or runs a dining hall. For example, hiring a full-time nurse or doctor for the campers' medical needs would not place the Council in the business of providing health care, which would simply be a necessary and essential step subordinate to the larger camping goal. Similarly, the Council's arranging for a third party to provide food for its camp attendees does not alter the purpose of the Council nor transform it into a dining hall or lunch room for tax purposes. The Council hired Marriott precisely so the Council could avoid running a food service. Marriott's on-the-scene involvement reinforces the conclusion that the Council is not a "restaurant business" for tax purposes.

## CONCLUSION

For the reasons stated above, the tax court properly granted summary judgment for DOR.

NOYES, P.J., and EHRLICH, J., concur.